**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WHIRLPOOL CORP.,<br>Plaintiff,<br>v.<br>ELECTROLUX CONSUMER PRODUCTS, INC.,<br>Defendant. | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Whirlpool Corp. ("Whirlpool" or "Plaintiff") brings this Complaint against Defendant Electrolux Consumer Products, Inc. ("Electrolux" or "Defendant"), alleging as follows:

**NATURE OF ACTION**

1. As alleged below, this is an action for patent infringement based on Electrolux's unlawful use of Whirlpool's patents directed to low-profile microwave hood combination products. Electrolux copied Whirlpool's award-winning design, and its misconduct has caused Whirlpool significant damage and irreparable harm.

**THE PARTIES**

2. Plaintiff Whirlpool Corp. is a Delaware corporation having its principal place of business located at 2000 North M-63, Benton Harbor, Michigan 49022.

3. Defendant Electrolux Consumer Products, Inc. is a Delaware corporation having its principal place of business located at 10200 David Taylor Drive, Charlotte, NC 28262. On information and belief, Electrolux Consumer Products, Inc. has also done business as Electrolux Home Products, Inc.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement under 35 U.S.C. § 271 *et seq*.

5. This Court has subject matter jurisdiction over this action under the laws of the United States, 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has general personal jurisdiction over Electrolux because Electrolux is engaged in substantial and not isolated activity and is incorporated within this judicial district. This Court has specific jurisdiction over Electrolux because Electrolux has committed acts giving rise to this action and has established more than minimum contacts within this judicial district, such that the exercise of jurisdiction over Electrolux in this Court would not offend traditional notions of fair play and substantial justice. On information and belief, Electrolux has also placed infringing products into the stream of commerce by shipping those products into Delaware or knowing that the products would be shipped there. Moreover, on information and belief, Electrolux has committed or aided, abetted, contributed to, and/or participated in the commission of, acts of infringement of the Asserted Patents that will lead to foreseeable harm and injury to Plaintiff, including within Delaware.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b) because Electrolux is incorporated and has committed acts of patent infringement within this judicial district.

## FACTUAL BACKGROUND

**Whirlpool's Background**

8. Whirlpool is a leading home appliance company dedicated to improving customers' quality of life at home through efficient, reliable, and innovative appliances.[1] As the only major

[1] *See* https://www.whirlpoolcorp.com/our-company.html (last visited Oct. 29, 2026).

manufacturer of kitchen and laundry appliances based in the United States, Whirlpool made nearly 90% of its 2025 sales in the Americas.[2]

9. Among its areas of specialty, Whirlpool designs and manufactures kitchen appliances, including low-profile microwave hood combination products ("LP-MHCs"). LP-MHCs are designed to fit into the undercabinet hood space above a cooking range, providing a two-in-one kitchen appliance that cooks and provides ventilation.[3] Compared to their traditional counterparts, LP-MHCs have significantly scaled-down overall vertical dimensions, allowing their installation in areas that previously could only accommodate a standalone ventilation hood. The benefit of this compact design is preserved through an LP-MHC's robust air circulation of byproducts produced when using the cooking range below (e.g., smoke or grease). An LP-MHC's space-saving properties save countertop space without sacrificing performance, providing users with an efficient and innovative dual-function kitchen appliance.

10. The below images show certain of the components for an exemplary Whirlpool LP-MHC (Model No. WMML5530RZ):




---

[2] *Id.*

[3] https://www.whirlpool.com/blog/kitchen/what-is-a-low-profile-microwave.html (last visited Oct. 29, 2026).






11. Whirlpool's LP-MHCs created a new, first-to-market category of MHCs, which had a significant impact on the cooking appliance industry and has enjoyed enormous commercial success. Whirlpool's creation of the LP-MHC product category was publicized in the industry and earned Whirlpool a 2019 iF Design Award.[4]

[4] https://www.prnewswire.com/news-releases/whirlpool-corporations-innovative-design-wins-big-at-if-design-awards-300813555.html (last visited Oct. 29, 2026).

12. Whirlpool has also been awarded numerous patents for its innovative LP-MHCs, including the patents identified herein. Whirlpool's products practice the claims of those patents.

**Accused Products and Activities**

13. Commercial success and patenting are often accompanied by copying from competitors. That is the case here. Indeed, subsequent to Whirlpool's product launch, Electrolux launched a line of copycat products under the Electrolux and/or Frigidaire brand names that practice the Asserted Patents. Electrolux's website even references the "low profile" design of LP-MHCs, a term coined by Whirlpool after conducting market research:[5]




14. On information and belief, Electrolux sells the infringing products under the "Frigidaire" and/or "Electrolux" brand names. Upon information and belief, Electrolux acts in concert with other manufacturers, including at least Midea Group Co., Ltd. and Midea America Corp. (collectively, "Midea"), by coordinating and entering into agreements to commercially manufacture, import, market, offer for sale, distribute, and/or sell infringing products in the United States, including within Delaware. On information and belief, Midea manufactures the Frigidaire- and/or Electrolux-branded products accused of infringement in this action. Electrolux's infringing products include at least the following Stock Keeping Unit ("SKU"): GMOS1266AF. On

[5] https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (last visited Oct. 30, 2026).

information and belief, Electrolux's infringing products, including at least SKU No. GMOS1266AF, are manufactured by Midea. The aforementioned Midea-manufactured products distributed by Electrolux in the United States are collectively referred to herein as the "Accused Products."

15. The below images show certain of the components for an exemplary Accused Product sold under the "Frigidaire" brand name (SKU No. GMOS1266AF), which constitutes an LP-MHC.







**THE ASSERTED PATENTS**

16. On August 3, 2021, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 11,079,118 ("the '118 patent"), titled "Combination Microwave and Hood System." The '118 patent lists the following individuals as inventors: Owen Zhang, Michael Ledford, Stephen Zheng, and Xiangxu Liu. The '118 patent is valid and enforceable. A copy of the '118 patent is attached as Exhibit A. Whirlpool is the owner of the '118 patent by written assignment. Whirlpool thus has standing to bring suit for infringement of the '118 patent. The Accused Products are accused of infringing the '118 patent.

17. On October 13, 2026, the PTO issued United States Patent No. 12,764,837 ("the '837 patent"), titled "Combination Microwave and Hood System." The '837 patent lists the following individuals as inventors: Owen (XunCai) Zhang, Michael A. Ledford, Stephen Zheng, and Xiangxu Liu. The '837 patent is valid and enforceable. A copy of the '837 patent is attached as Exhibit B. Whirlpool is the owner of the '837 patent by written assignment. Whirlpool thus has

standing to bring suit for infringement of the ’837 patent. The Accused Products are accused of infringing the ’837 patent.

18. On November 3, 2026, the PTO issued United States Patent No. 12,787,131 (“the ’131 patent”), titled “Combination Microwave and Hood System.” The ’131 patent lists the following individuals as inventors: Owen (XunCai) Zhang, Michael A. Ledford, Stephen Zheng, and Xiangxu Liu. The ’131 patent is valid and enforceable. A copy of the ’131 patent is attached as Exhibit C. Whirlpool is the owner of the ’131 patent by written assignment. Whirlpool thus has standing to bring suit for infringement of the ’131 patent. The Accused Products are accused of infringing the ’131 patent.

19. Whirlpool has complied with the marking requirements under 35 U.S.C. § 287 such that Whirlpool is entitled to collect past damages for infringement of the Asserted Patents. Whirlpool’s LP-MHCs practice the Asserted Patents, and Whirlpool’s practicing products have been marked with the Asserted Patent numbers.

**COUNT I**

**(Infringement of U.S. Patent No. 11,079,118)**

20. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–19 of this Complaint.

21. Upon information and belief, Electrolux makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claim 6 of the ’118 patent, under 35 U.S.C. § 271(a).

22. The explanation below shows how the Accused Products directly infringe asserted independent claim 6 of the ’118 patent. Plaintiff analyzes only GMOS1266AF herein as a representative of other Electrolux LP-MHC products that may later become known to Plaintiff in discovery.

23. To the extent the preamble is limiting, each Accused Product comprises "[a]n external enclosure for a combined ventilation hood and microwave oven system." The GMOS1266AF is an over-the-range combination microwave oven and ventilation hood that is designed to mount beneath cabinetry above a cooking range, and it includes an external enclosure that encases the microwave oven and ventilation components.[6]




24. Each Accused Product comprises "an outer wrapper including a top surface and two side portions." The external enclosure of the GMOS1266AF includes an outer wrapper that has a top surface extending between a first side portion and a second side portion. The below images show the GMOS1266AF both with (front view) and without (rear view) the outer wrapper and rear plate.

[6] https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (last visited Oct. 30, 2026).






25. Each Accused Product comprises an outer wrapper "wherein the outer wrapper has a plurality of air passages defined thereon including a cooling air inlet, a cooling air outlet, and at least one recirculation vent outlet." The top surface of the GMOS1266AF's outer wrapper has a plurality of air passages defined thereon, including a cooling air inlet located on the front right side of the top surface, a cooling air outlet located on the front left side of the top surface, and at least one recirculation vent outlet located along the front edge of the top surface between the cooling air inlet and the cooling air outlet. The recirculation vent outlet(s) is an opening, separate from the outside vent outlet, through which the hood fan expels exhaust air that it draws in through the vent

inlets on the bottom of the product. The below image shows the air passages on the top surface of the outer wrapper.



26. In each Accused Product, "the cooling air inlet is in fluid communication with the cooling air outlet." In the GMOS1266AF, a cooling fan draws air in through the cooling air inlet, directs that air across the cooking components and through the cooking cavity, and expels the air through the cooling air outlet. The cooling air inlet and the cooling air outlet are therefore in fluid communication with one another.

27. In each Accused Product, "the top surface defines an outside vent outlet." The top surface of the GMOS1266AF's outer wrapper defines an outside vent outlet located at the rear edge of the top surface, through which exhaust air is expelled to an outside area when the product operates in an outside venting mode. The outside vent outlet is covered when the product operates in a recirculation mode. The below image shows the GMOS1266AF's outside vent outlet covered with a silver plate.



28. Each Accused Product comprises "a door." The GMOS1266AF includes a front door that is operable to open and close to provide access to, and enclose, the cooking cavity.

29. Each Accused Product comprises "a rear plate." The external enclosure of the GMOS1266AF includes a rear plate that forms the rear of the external enclosure.

30. Each Accused Product comprises "a base plate defining at least one vent inlet." The bottom of the GMOS1266AF's external enclosure is formed by a base plate that defines at least one vent inlet through which contaminated exhaust air rising from the cooking range below is drawn into the product by the hood fan. The below image shows a bottom view of the GMOS1266AF, including multiple vent inlets on the base plate.



31. In each Accused Product, "the at least one vent inlet is in fluid communication with the at least one recirculation vent outlet and the outside vent outlet." In the GMOS1266AF, the hood fan draws contaminated air through the vent inlets on the base plate and routes that air through the interior of the external enclosure. In recirculation mode, the hood fan expels that air vertically through the recirculation vent outlets along the front edge of the top surface. In outside venting mode, the hood fan expels that air vertically through the outside vent outlet at the rear edge of the top surface. The vent inlets are therefore in fluid communication with both the recirculation vent outlets and the outside vent outlet.

32. Accordingly, each Accused Product meets every limitation of claim 6 of the '118 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

33. Upon information and belief, Electrolux currently actively induces and has induced infringement of the ’118 patent pursuant to 35 U.S.C. § 271(b) through, among other things, actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

34. For example, Electrolux actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website,[7] and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Accused Products. Electrolux also coordinates with Midea to distribute in Delaware infringing Accused Products manufactured by Midea.

35. Upon information and belief, Electrolux has had knowledge of the ’118 patent and that the Accused Products infringe the asserted claim(s) of the ’118 patent since at least the November 18, 2025 filing of a related complaint with the International Trade Commission that involved the ’118 patent and named Electrolux as a party (the “ITC Proceeding”). Electrolux also had knowledge of its infringement of at least claim 6 of the ’118 patent by no later than May 1, 2026, when Whirlpool filed a motion in the ITC Proceeding to add allegations of infringement of claim 6 (and other claims) against Midea. As Midea is upon information and belief the supplier of microwave-hood combination products to Electrolux and its products are structurally and functionally the same as the Midea products, and Electrolux has the same outside counsel as Midea in the ITC Proceeding, Electrolux knew or should have known its microwave-hood combination products infringed at least claim 6 of the ’118 patent as of the filing of the motion in the ITC

[7] *See, e.g.*, https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (web page for GMOS1266AF; markets “low-profile design that easily fits into your existing undercabinet hood space without losing interior capacity” and provides links to product manuals) (last visited Oct. 29, 2026).

Proceeding. Further, contemporaneously with the filing of this Complaint, Whirlpool provided Electrolux with a copy of the Complaint and exhibits to the Complaint. As a result, Electrolux received notice of the ’118 patent and the infringement at issue no later than the filing of the ITC Complaint, the May 1, 2026 motion in the ITC Proceeding, and/or the filing of this Complaint. By the time of trial, Electrolux will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the ’118 patent.

36. Upon information and belief, Electrolux’s infringement of the ’118 patent has been and continues to be willful.

37. Upon information and belief, Electrolux knew of the ’118 patent or was willfully blind to its existence.

38. Electrolux’s infringement of the ’118 patent has been without permission, consent, authorization, or license from Whirlpool.

39. As a result of Electrolux’s infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Electrolux’s infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## COUNT II

### (Infringement of U.S. Patent No. 12,764,837)

40. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–39 of this Complaint.

41. Upon information and belief, Electrolux makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claims 1 and 31 of the ’837 patent, under 35 U.S.C. § 271(a).

42. The explanation below shows how the Accused Products directly infringe asserted independent claims 1 and 31 of the '837 patent. Plaintiff analyzes only GMOS1266AF herein as a representative of other Electrolux LP-MHC products that may later become known to Plaintiff in discovery.

43. Claim 1: To the extent the preamble is limiting, each Accused Product is "[a] microwave oven." The GMOS1266AF is an over-the-range combination microwave oven and ventilation hood that cooks food using microwaves.[8]




44. Each Accused Product comprises "an external enclosure including: a first side portion." The GMOS1266AF has an external enclosure that encases the appliance, and that enclosure includes a first (right) side portion. The below image shows the first side portion of the external enclosure.[9]

---

[8] https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (last visited Oct. 30, 2026).

[9] *Id.*




45. The external enclosure of each Accused Product includes "a second side portion." The external enclosure of the GMOS1266AF includes a second (left) side portion. The below image shows the second side portion of the external enclosure.[10]




46. The external enclosure of each Accused Product includes "a top portion extending from the first side portion to the second side portion." The external enclosure of the GMOS1266AF includes a top portion that extends between its right and left side portions. The below image shows the top portion of the external enclosure, which extends from the first side portion to the second side portion.

[10] *Id.*



47. The external enclosure of each Accused Product includes "a bottom portion extending from the first side portion to the second side portion and including a bottom surface, corners of the bottom surface defining a horizontal plane." The external enclosure of the GMOS1266AF includes a bottom portion extending between its right and left side portions. The bottom portion includes a flat bottom surface whose corners define a horizontal plane. The below image shows the bottom portion of the external enclosure of the GMOS1266AF, which extends from the first side to the second side.



48. The external enclosure of each Accused Product includes "a rear portion extending from the first side portion to the second side portion." The external enclosure of the GMOS1266AF includes a rear portion (rear plate) that extends between its right and left side portions and forms the rear of the enclosure.

49. The external enclosure of each Accused Product includes "a door." The GMOS1266AF includes a front door. The below image shows the GMOS1266AF's door.[11]




50. Each Accused Product comprises "an air filter disposed at the bottom surface, wherein a planar extent of the air filter is at or above the horizontal plane." The GMOS1266AF includes an air filter (grease filter) disposed at the bottom surface of the external enclosure over the vent inlets. The filter is recessed within, or flush with, the bottom surface such that its planar extent is at or above the horizontal plane defined by the corners of the bottom surface. The below

[11] *Id.*

image from Electrolux's "use & care" manual for the GMOS1266AF shows the bottom of the GMOS1266AF and air filters disposed at the bottom surface.[12]

**CLEANING THE GREASE FILTER**

The oven ventilation grease filters should be removed and cleaned often; generally at least once every month.

**CAUTION**

To avoid risk of personal injury or property damage, do not operate oven hood without filter properly in place.



2. Soak the ventilation filters in hot water using a mild detergent. Rinse well and shake to dry or wash in a dishwasher.

**NOTE**

Do not use ammonia. The aluminum on the filter will corrode and darken.

3. To reinstall the exhaust ventilation filter, slide it into the side slot, then push up and toward oven to lock. Reinstall the 2nd filter using the same procedure.



51. Each Accused Product comprises "a cooking cavity located within the external enclosure, wherein the door is operable to enclose the cooking cavity." The GMOS1266AF has a cooking cavity located inside the external enclosure, and the door closes to fully enclose the cooking cavity. The below image from Electrolux's website shows the GMOS1266AF's door open, revealing the cooking cavity behind.[13]

---

[12] https://frigidaire.bynder.com/asset/4b2c78ae-14a1-42e4-bad5-9136fba0ced7/A06823450en-pdf.pdf (last visited Oct. 30, 2026)

[13] https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (last visited Oct. 30, 2026).



52. Each Accused Product comprises "a cooking component located inside the external enclosure and outside the cooking cavity." The GMOS1266AF includes cooking components, including the components for generating microwaves and propagating them into the cooking cavity, located inside the external enclosure and outside the cooking cavity. The below image of the GMOS1266AF shows various cooking components located at the right side of the microwave between the cooking cavity and the first side portion of the external enclosure.



53. Each Accused Product comprises "at least one vent outlet." The GMOS1266AF has multiple vent outlets, including recirculation vent outlet(s) located along the front edge of the top portion and an outside vent outlet located at the rear edge of the top portion. The below image shows the recirculation vent outlets and the outside vent outlet, which is covered by a silver plate.



54. Each Accused Product comprises "at least one vent inlet located on the bottom surface of the external enclosure, wherein the air filter extends across the at least one vent inlet." The bottom surface of the GMOS1266AF's external enclosure includes at least one vent inlet, and the air filter extends across that vent inlet. The below image shows the GMOS1266AF's bottom surface, which includes multiple vent inlets that hold air filters extending across them.



55. Each Accused Product comprises "at least one hood fan located inside the external enclosure, wherein the at least one hood fan is configured to: draw ventilation air through the at

least one vent inlet from an area below the external enclosure." The GMOS1266AF has a hood fan located inside the external enclosure. The hood fan is oriented and positioned to draw ventilation air, such as smoke and grease-laden air rising from the cooktop below, up through the vent inlets on the bottom surface of the enclosure. The below image shows the GMOS1266AF's hood fan located between the cooking cavity and the rear portion of the external enclosure (removed).



56. The at least one hood fan of each Accused Product is configured to "expel the ventilation air through the at least one vent outlet." In the GMOS1266AF, the hood fan is oriented and positioned to expel the ventilation air through the recirculation vent outlets in recirculation mode, and through the outside vent outlet in outside venting mode.

57. Each Accused Product comprises "a cooling air inlet." The GMOS1266AF has a cooling air inlet on the front right side of the top portion.

58. Each Accused Product comprises "a cooling air outlet in fluid communication with the cooling air inlet." The GMOS1266AF has a cooling air outlet on the front left side of the top portion. Air drawn in through the cooling air inlet passes through the interior of the product,

including through the cooking cavity, and is expelled through the cooling air outlet. The cooling air inlet and the cooling air outlet are therefore in fluid communication.

59. Each Accused Product comprises "a cooling fan in fluid communication with the cooling air inlet and the cooling air outlet." The GMOS1266AF includes a cooling fan that draws air through the cooling air inlet, directs it across the cooking components and through the cooking cavity, and expels it through the cooling air outlet. The cooling fan is therefore in fluid communication with both the cooling air inlet and the cooling air outlet. The below image shows the cooling fan in white located between the cooking cavity and the first side portion of the external enclosure.



60. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located between at least one vertical surface of the external enclosure and the cooking cavity." In the GMOS1266AF, the cooling fan and the cooking components are located in the space between the exterior of the cooking cavity and a vertical side surface of the external enclosure. The hood fan is located in the space between the cooking cavity and the vertical rear surface of the external enclosure. The below images show the cooling fan and the cooking components located between the cooking cavity and the first side portion of the external enclosure

(removed) and the at least one hood fan between the cooking cavity and the rear surface of the external enclosure (removed).



61. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located above the air filter and below each of the cooling air outlet and the at least one vent outlet." In the GMOS1266AF, the cooling fan, hood fan, and cooking component are each located above the air filter at the bottom surface of the enclosure, and below the cooling air outlet and the vent outlets, which are defined in the top portion of the external enclosure.

62. Accordingly, each Accused Product meets every limitation of claim 1 of the '837 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

63. Claim 31: Each Accused Product also meets every limitation of independent claim 31 of the '837 patent. Claim 31 recites the same preamble and the same limitations as claim 1, except as to (i) the hood fan being configured to draw and expel ventilation air "vertically," and (ii) the final "wherein" clause. Each limitation of claim 31 that is identical to a limitation of claim 1 is met for the reasons set forth in paragraphs 43–62 above, which are incorporated by reference.

64. The at least one hood fan of each Accused Product is configured to "draw ventilation air vertically through the at least one vent inlet from an area below the external enclosure." As set forth in paragraph 55, the hood fan of the GMOS1266AF draws ventilation air through the vent inlets on the bottom surface of the enclosure from the cooktop area below. Because the vent inlets face downward on the horizontal bottom surface, and because the hood fan is oriented and positioned to draw air through the vent inlets, the ventilation air is drawn vertically upward through the at least one vent inlet from an area below the external enclosure.

65. The at least one hood fan of each Accused Product is configured to "expel the ventilation air vertically through the at least one vent outlet." As set forth in paragraph 56, the hood fan of the GMOS1266AF expels ventilation air through the vent outlets on the top surface of the enclosure. Because the recirculation vent outlets and outside vent outlet face upward on the horizontal top surface, and because the hood fan is oriented and positioned to expel air through the vent outlets, the ventilation air is expelled vertically upward through the recirculation vent outlets in recirculation mode and the outside vent outlet in outside venting mode.

66. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located between at least one vertical surface of the external enclosure and the cooking cavity, and . . . each of the cooling fan, the at least one hood fan, and the cooking component is located above the air filter and below the cooling air inlet." As set forth in paragraphs 60–61, the cooling fan, hood fan, and cooking component of the GMOS1266AF are each located between a vertical surface of the external enclosure and the cooking cavity, and above the air filter. Each of these components is also located below the cooling air inlet, which is defined in the top portion of the external enclosure.

67. Accordingly, each Accused Product meets every limitation of claim 31 of the ’837 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

68. Upon information and belief, Electrolux currently actively induces and has induced infringement of the ’837 patent pursuant to 35 U.S.C. § 271(b) through, among other things, actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

69. For example, Electrolux actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website, and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Accused Products. Electrolux also coordinates with Midea to distribute in Delaware infringing Accused Products manufactured by Midea.

70. Upon information and belief, Electrolux has had knowledge of the ’837 patent and that the Accused Products infringe the asserted claims of the ’837 patent and learned of this at least from the filing of this Complaint. Contemporaneously with the filing of this Complaint, Whirlpool provided Electrolux with a copy of the Complaint and exhibits to the Complaint. As a result, Electrolux received notice of the ’837 patent and the infringement at issue no later than the filing of the Complaint. By the time of trial, Electrolux will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the ’837 patent.

71. Upon information and belief, Electrolux's infringement of the '837 patent has been and continues to be willful.

72. Upon information and belief, Electrolux knew of the '837 patent or was willfully blind to its existence.

73. Electrolux's infringement of the '837 patent has been without permission, consent, authorization, or license from Whirlpool.

74. As a result of Electrolux's infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Electrolux's infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**COUNT III**

**(Infringement of U.S. Patent No. 12,787,131)**

75. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–74 of this Complaint.

76. Upon information and belief, Electrolux makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claim 1 of the '131 patent, under 35 U.S.C. § 271(a).

77. The explanation below shows how the Accused Products directly infringe asserted independent claim 1 of the '131 patent. Plaintiff analyzes only GMOS1266AF herein as a representative of other Electrolux LP-MHC products that may later become known to Plaintiff in discovery.

78. To the extent the preamble is limiting, each Accused Product is "[a] microwave hood combination appliance." The GMOS1266AF is an over-the-range combination microwave oven and ventilation hood that cooks food using microwaves.[14]




79. Each Accused Product comprises "an external enclosure including a front surface, a rear surface, a top surface, a bottom surface, and first and second side surfaces." The GMOS1266AF has an external enclosure that includes a front surface, a rear surface (the rear plate), a top surface, a bottom surface, and left and right side surfaces. The below images show the first side surface (top left), the second side surface (top right), the bottom and front surfaces (middle left), the top surface (middle right), and the rear plate (bottom) of the external enclosure of the GMOS1266AF microwave.[15]

---

[14] https://www.frigidaire.com/en/p/kitchen/microwaves/over-the-range-microwave/GMOS1266AF (last visited Oct. 30, 2026).

[15] *Id.*













80. Each Accused Product comprises "a cooking cavity disposed within the external enclosure, wherein the cooking cavity is defined by a plurality of cavity walls that extend between a top cavity wall and a bottom cavity wall." The GMOS1266AF has a cooking cavity inside the external enclosure. The cavity is defined by a top cavity wall, a bottom cavity wall, and side and rear cavity walls extending between them. The below image shows the GMOS1266AF's cooking cavity and its top, bottom, side, and rear cavity walls.[16]

[16] *Id.*



81. Each Accused Product comprises "a door coupled with the external enclosure for selectively closing an opening into the cooking cavity, wherein in a closed position, the door extends from a bottom plane defined by the bottom surface of the external enclosure to a top plane defined by the top surface of the external enclosure." The GMOS1266AF has a door coupled with the external enclosure that opens and closes the opening into the cooking cavity. When closed, the top of the door is coplanar with the top surface of the enclosure, and the door extends down to the plane defined by the bottom surface of the enclosure. The below images from Electrolux's website show the GMOS1266AF's door both open and closed, where in a closed position, the door is coplanar with the top and bottom surfaces of the external enclosure.[17]






82. Each Accused Product comprises "a magnetron disposed within a cooking component area defined within the external enclosure, wherein the cooking component area is laterally adjacent to the cooking cavity and extends from the cooking cavity to the second side

[17] *Id.*

surface of the external enclosure." The GMOS1266AF has a magnetron located in a cooking component area inside the external enclosure. That area sits beside the cooking cavity and extends from the cavity to the right (here, the second) side surface of the enclosure. The below image shows the GMOS1266AF's cooking components, including the magnetron, located within a cooking component area laterally adjacent to the cooking cavity, between the cooking cavity and the right side surface of the external enclosure (removed).



83. Each Accused Product comprises "a cooling fan configured to drive a cooling airflow through the cooking component area to cool the magnetron." The GMOS1266AF has a cooling fan oriented and positioned to draw air through the cooling air inlet and drive it across the cooking component area, including the magnetron, to cool those components, before the air passes through the cooking cavity and out the cooling air outlet. The below image shows the cooling fan in white.



84. Each Accused Product comprises "at least one ventilation inlet located at the bottom surface of the external enclosure." The bottom surface of the GMOS1266AF's external enclosure includes at least one ventilation inlet, through which air from the cooktop below is drawn into the product. The below image of the GMOS1266AF shows two vent inlets located on the bottom surface of the external enclosure.



85. Each Accused Product comprises "at least one air outlet located at the top plane between a front edge of the top surface and a rear edge of the top surface." The top surface of the GMOS1266AF's external enclosure defines several air outlets, including recirculation vent

outlet(s), an outside venting outlet, and a cooling air outlet. These outlets are defined on the top surface between its front edge and its rear edge. The below image shows the GMOS1266AF's various air outlets.[18]



86. Each Accused Product comprises "a ventilation passage extending from the at least one ventilation inlet and between the external enclosure and the cooking cavity." In the GMOS1266AF, air drawn in through the ventilation inlets travels through a passage that runs from those inlets through the space between the external enclosure and the cooking cavity, toward the recirculation vent outlet(s) in recirculation mode and toward the outside venting outlet in outside venting mode.

87. Each Accused Product comprises "a hood fan assembly disposed within the external enclosure and outside the cooking cavity, wherein the hood fan assembly is in fluid communication with the ventilation passage." The GMOS1266AF has a hood fan assembly located inside the external enclosure and outside the cooking cavity. The hood fan draws air through the ventilation inlets and the ventilation passage, and expels it through the vent outlets, so it is in fluid

[18] The vent at the front right of the top portion of the external enclosure is the cooling-air *inle*t, not an outlet.

communication with the ventilation passage. The below image of the GMOS1266AF shows the hood fan within the ventilation passage.



88. Accordingly, each Accused Product meets every limitation of claim 1 of the ’131 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

89. Upon information and belief, Electrolux currently actively induces and has induced infringement of the ’131 patent pursuant to 35 U.S.C. § 271(b) through, among other things, actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

90. For example, as shown above, Electrolux actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website, and through its sales and distribution channels that encourage infringing sales, offers

to sell, and importation of the Accused Products. Electrolux also coordinates with Midea to distribute in Delaware infringing Accused Products manufactured by Midea.

91. Upon information and belief, Electrolux has had knowledge of the ’131 patent and that the Accused Products infringe the asserted claim of the ’131 patent and learned of this at least from the filing of this Complaint. Contemporaneously with the filing of this Complaint, Whirlpool provided Electrolux with a copy of the Complaint and exhibits to the Complaint. As a result, Electrolux received notice of the ’131 patent and the infringement at issue no later than the filing of the Complaint. By the time of trial, Electrolux will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the ’131 patent.

92. Upon information and belief, Electrolux’s infringement of the ’131 patent has been and continues to be willful.

93. Upon information and belief, Electrolux knew of the ’131 patent or was willfully blind to its existence.

94. Electrolux’s infringement of the ’131 patent has been without permission, consent, authorization, or license from Whirlpool.

95. As a result of Electrolux’s infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Electrolux’s infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Adjudge that Electrolux has infringed and is infringing one or more claims of each of the Asserted Patents, directly and/or indirectly, literally, and/or under the doctrine of equivalents;

B. Award damages, including past damages, sufficient to compensate Plaintiff for Electrolux's infringement under 35 U.S.C. § 284, including an award of treble damages for willful infringement;

C. Find this case exceptional under 35 U.S.C. § 285, and award Plaintiff its reasonable attorneys' fees;

D. Enjoin Electrolux, and all persons in concert or participation with it, from directly or indirectly infringing one or more claims of each of the above Asserted Patents, directly and/or indirectly, literally, and/or under the doctrine of equivalents;

E. Award Plaintiff its costs and expenses incurred in this action;

F. Award Plaintiff pre-judgment and post-judgment interest; and

G. Grant Plaintiff such further relief as the Court deems just and appropriate.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

<u>*/s/ Dominick T. Gattuso*</u>
Dominick T. Gattuso (#3630)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Plaintiff*

OF COUNSEL:

Robert T. Vlasis III
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7430
RVlasis@mintz.com

Brian E. Ferguson
KING & SPALDING LLP
1700 Pennsylvania Avenue,
NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
bferguson@kslaw.com

Dated: November 5, 2026